Index No. 15-cv-9358 (GHW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN RENEL JOSEPH,

                                                    Plaintiff,

        - against –

METROPOLITAN MUSEUM OF ART; and
CITY OF NEW YORK,

                                                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS THE COMPLAINT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street, Rm. 2-113*
*New York, NY 10007*

*Of Counsel:  Omar H. Tuffaha*
*Tel:  (212) 356-0896*
*Matter No. 2015-05856*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

POINT I

      PLAINTIFF FAILS TO STATE A FIRST AMENDMENT CLAIM.................3

        A.  The Met's Display Of The Paintings Is Not State Action ..................................................................................... 4

        B.  The Display Of The Paintings Does Not Violate the First Amendment ........................................................... 6

          1.  Plaintiff Does Not Have a First Amendment Right to Censor Art He  Deems Offensive…………………….....................7

          2.  Even Assuming That Display of the Paintings Constitutes Government Speech, Plaintiff's Claim Fails as a Matter of Law……………......................................8

        C.  The City's Provision Of Funding To The Met Does Not Violate Plaintiff's First Amendment Rights ....................................... 11

POINT II

    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CIVIL RIGHTS ACT OF 1964 .......................................................................... 12

      A.  Plaintiff Fails To State A Claim Under Title II.......................... 12

      B.  Plaintiff Fails To State A Claim Under Title VI ........................ 14

CONCLUSION.................................................................................................. 15

## __TABLE OF AUTHORITIES__

__Cases__

Abbas v. Dixon,
   480 F.3d 636 (2d Cir. 2007) ..................................................... 3

Acheampong v. N.Y. City Health & Hosps. Corp.,
   No. 11 Civ. 9205, 2015 U.S. Dist. LEXIS 37933 (S.D.N.Y. Mar. 25, 2015) ........................ 14

Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.,
   760 F.3d 227, 246 (2d Cir. 2014) .......................................... 8

Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.,
   936 F. Supp. 2d 321 (S.D.N.Y. 2013) ................................ 4, 5, 6, 8, 9, 13

Arons v. State,
   No. 04 Civ. 0004, 2004 U.S. Dist. LEXIS 9088 (S.D.N.Y. May 19, 2004) .............................. 5

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)................................................................... 2

Ass'n v. Civil Serv. Comm'n of New York,
   463 U.S. 582 (1983)..................................................................... 15

Baker v. McCollan,
   443 U.S. 137 (1979).................................................................... 3

Bentley, Jr. v. Mobil Gas Station,
   599 F. App'x 395 (2d Cir. 2015) ....................................... 14

Boos v. Barry,
   485 U.S. 312 (1988).................................................................... 7

Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n ,
   531 U.S. 288 (2001)...................................................................... 4

Brooklyn Inst. of Arts & Scis v. City of New York,
   64 F. Supp. 2d 184 (E.D.N.Y. 1999) ........................................ 5, 9, 11

Cooper v. U.S. Postal Serv.,
   577 F.3d 479 (2d Cir. 2009) ................................................... 4

County of Allegheny v. ACLU,
   492 U.S. 573 (1989)................................................................... 9, 10

Coward v. Town & Vill. Of Harrison,
    665 F. Supp. 2d 281 (S.D.N.Y. 2009) ................................................................. 13

Daniel v. Paul,
    395 U.S. 298 (1969)............................................................................................. 12

Ferguson v. Cai,
    No. 11 Civ. 6181, 2012 U.S. Dist. LEXIS 97049 (S.D.N.Y. July 11, 2012) ............................ 3

First Nationwide Bank v. Gelt Funding Corp.,
     27 F.3d 763 (2d Cir. 1994) ................................................................................. 3

Gant v. Wallingford Bd. of Educ.,
    69 F.3d 669 (2d Cir. 1995) ................................................................................ 13

Ghaznavi v. Days Inn of Am., Inc.,
    No. 91 Civ. 4520, 1993 U.S. Dist. LEXIS 11707 (S.D.N.Y. Aug. 20, 1993) ........................ 12

Grogan v. Blooming Grove Volunteer Ambulance Corps,
    768 F.3d 259 (2d Cir. 2014) ................................................................................ 4

Guichardo v. Langston Hughes Queens Library,
    No. 15-cv-2866, 2015 U.S. Dist. LEXIS 157894 (E.D.N.Y. Nov. 20, 2015) ................... 12, 13

Hollander v. Copacabana Nightclub,
    624 F.3d 30 (2d Cir. 2010) .................................................................................. 4

Johanns v. Livestock Mktg. Ass'n,
    544 U.S. 550 (2005)............................................................................................. 8

Lemon v. Kurtzman,
    403 U.S. 602 (1971)............................................................................................. 9

Lizardo v. Denny's, Inc.,
    270 F.3d 94 (2d Cir. 2001) ................................................................................ 13

Lynch v. Donnelly,
    465 U.S. 668 (1984)............................................................................................. 9

Olzmand v. Lake Hills Swim Club, Inc.,
    495 F.2d 1333 (2d Cir. 1974) ............................................................................ 13

Parratt v. Taylor,
    451 U.S. 527 (1981)............................................................................................. 3

Pitchell v. Callan,
    13 F.3d 545 (2d Cir. 1994) .................................................................................. 3

Pleasant Grove City v. Summum,
    555 U.S. 460 (2009)................................................................................... 8, 10

Police Dep't v. Mosley,
    408 U.S. 92 (1972)........................................................................................ 8

Rendell-Baker,
    457 U.S. 830, 841 (1992)............................................................................. 5

Rodriguez v. Weprin,
    116 F.3d 62 (2d Cir. 1997) .......................................................................... 3

Saidin v. N.Y.C. Dep't of Educ.,
    498 F. Supp. 2d 683 (S.D.N.Y. 2007) ........................................................ 3

San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,
    483 U.S. 522 (1987)..................................................................................... 5

Snyder v. Phelps,
    562 U.S. 443 (2011)..................................................................................... 7

Spinale v. USDA,
    621 F. Supp. 2d 112 (S.D.N.Y. 2009) ........................................................ 2

Staehr v. Hartford Fin. Servs. Grp., Inc.,
    547 F.3d 406 (2d Cir. 2008) ........................................................................ 2

Stone v. N.Y. Pub. Library,
    No. 05 Civ. 10896, 2008 U.S. Dist. LEXIS 32800 (S.D.N.Y. Apr. 22, 2008) ........................ 12

Sulehria v. New York,
    No. 13 Civ. 6990, 2014 U.S. Dist. LEXIS 132924 (S.D.N.Y. Sept. 19, 2014) ........................ 15

Teletronics Proprietary, Ltd. v. Medtronic, Inc.,
    687 F. Supp. 832 (S.D.N.Y. 1988) ............................................................. 2

Texas v. Johnson,
    491 U.S. 397 (1981)..................................................................................... 7

Trunk v. City of Sandiego,
    629 F.3d 1099 (9th Cir. 2011) ..................................................................... 9

United States v. Playboy Entertainment Group,
    529 U.S. 803 (2000)..................................................................................... 7

Van Orden v. Perry,
    351 F.3d 173 (5th Cir. 2003) ....................................................................... 9

Virginia v. Black,
   538 U.S. 343 (1989)..................................................................................................... 7

Whitehurst v. 230 Fifth, Inc.,
   No. 11 Civ. 0767, 2011 U.S. Dist. LEXIS 81573 (S.D.N.Y. July 26, 2011) .................... 12, 13

## **Statutes**

42 U.S.C. § 1981............................................................................................................. 12, 13

42 U.S.C. § 1983............................................................................................................... 3, 4, 6

42 U.S.C. § 2000a et seq.................................................................................................. 12, 13

42 U.S.C. § 2000d et seq................................................................................................... 14

Fed. R. Civ. P. 12(b)(6).................................................................................................... 1, 2, 3

N.Y.Civ. Rights L. ........................................................................................................... 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x
JUSTIN RENEL JOSEPH,

                                               Plaintiff,

                 -against-                        15-cv-9358 (GHW)

METROPOLITAN MUSEUM OF ART; and
CITY OF NEW YORK,

                                           Defendants.
---------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

        Plaintiff brings this action against the Metropolitan Museum of Art ("The Met") and the City of New York ("City"), alleging that the display of certain pieces of artwork at The Met violates his rights under the First Amendment and Titles II and VI of the Civil Rights Act of 1964.  As fully set forth below, Plaintiff's claims, which are based on his allegation that he was purportedly personally offended by the artwork, are entirely without merit and have no basis in the law.  Accordingly, Defendant City now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff fails to state a claim for violation of any constitutional or federal right.

### STATEMENT OF FACTS

        Plaintiff, who is proceeding pro se, alleges that on November 26, 2015, he visited The Met and observed four paintings (the "Paintings") that he deems to be anti-Semitic, racist, and offensive. See Compl. ¶¶ 1-4, 13-14, 16-17, ECF No. 1.  The Paintings, copies of which are attached as exhibits to Plaintiff's Complaint, were painted by Italian artists in the sixteenth and eighteenth centuries. See id., Exhibits 1-4.  According to the Complaint, the Paintings "depict the

historical and public figure of Hebrew descent, Jesus Christ, as a blonde haired, fair-skinned, Aryan adult male, despite that an adult male native to the Middle Eastern region of Hebrew descent who existed from approximately 1 B.C.E. to approximately 33 A.D. would not be genetically disposed to possess such features (i.e., blonde hair, fair-skin and other Aryan features)." Id. ¶¶ 2, 16.  Plaintiff states that as "a biracial male who is of Hebrew and African descent" himself, who has "black hair like wool and skin of bronze color, and is a Christian," id. ¶¶ 3, 14, he is offended by the way in which Jesus is depicted in the Paintings and was emotionally and psychologically harmed by viewing them. Id. ¶¶ 4, 28.

Based on the foregoing, Plaintiff asserts violations of his rights under the First Amendment and Titles II and VI of the Civil Rights Act of 1964. Id. ¶¶ 1, 8, 19-34.  He seeks injunctive relief requiring that the Paintings be removed from The Met's permanent gallery, and declaratory relief in the form of a declaration that Defendants violated the Civil Rights Act of 1964. Id. ¶¶ 7, 36-39.

## **STANDARD OF REVIEW**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 424 (2d Cir. 2008).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  At a minimum, then, the pleading must set forth sufficient information for the Court to determine whether the allegations support some recognized legal theory. Spinale v. USDA, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009) (citing Teletronics Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832, 836 (S.D.N.Y. 1988), aff'd, 356 F. App'x 465 (2d Cir. 2009)).

Furthermore, while <u>pro se</u> pleadings are to be construed liberally and read to raise the strongest arguments that they suggest, <u>see, e.g.</u>, <u>Abbas v. Dixon</u>, 480 F.3d 636, 639 (2d Cir. 2007), this does not relieve <u>pro se</u> plaintiffs of the requirement to plead enough facts to "nudg[e] their claims across the line from conceivable to plausible," <u>Twombly</u>, 550 U.S. at 570, or to otherwise comply with the pleading standards prescribed by the Federal Rules of Civil Procedure. <u>Saidin v. N.Y.C. Dep't of Educ.</u>, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007). Thus, dismissal of a <u>pro se</u> complaint is appropriate where the plaintiff has clearly failed to meet the pleading requirements. <u>See</u> <u>Ferguson v. Cai</u>, No. 11 Civ. 6181, 2012 U.S. Dist. LEXIS 97049, at *6 (S.D.N.Y. July 11, 2012) (citing <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 65 (2d Cir. 1997)).

Finally, a court need not accept as true "conclusions of law or unwarranted deductions of fact." <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 771 (2d Cir. 1994). Rather, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.

## <u>ARGUMENT</u>

### POINT I

### <u>PLAINTIFF FAILS TO STATE A FIRST AMENDMENT CLAIM</u>

The proper vehicle for Plaintiff's constitutional claim is 42 U.S.C. § 1983, which "is not itself a source of substantive rights," but rather provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979). To make out a claim under § 1983, a plaintiff must allege two elements. First, "the conduct complained of must have been committed by a person acting under color of state law." <u>Pitchell v. Callan</u>, 13 F.3d 545, 547 (2d

Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)).   Second, "the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Id.

      Here, Plaintiff asserts a violation of the First Amendment, made applicable to the states through the Fourteenth Amendment, but cannot satisfy either component of a § 1983 claim.   The Met's display of the Paintings is not government action, and, even if it were, the display of the Paintings does not violate Plaintiff's rights under the First Amendment.

**A.**    <u>**The Met's Display Of The Paintings Is Not State Action**</u>

      "Because the United States Constitution regulates only the Government, not private parties, a litigant . . . who alleges that her constitutional rights have been violated must first establish that the challenged conduct constitutes state action." Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259, 263 (2d Cir. 2014) (internal quotation marks omitted); see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) ("Constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains") (emphasis in original) (internal quotation marks omitted).   Where the action of a private entity is at issue, state action may be found only if "there is a sufficiently close nexus between the State and the challenged action of the . . . entity so that the action of the latter may be fairly treated as the State itself." Cooper v. U.S. Postal Serv., 577 F.3d 479, 491 (2d Cir. 2009) (alteration in original) (quoting United States v. Stein, 541 F.3d 130, 146 (2d Cir. 2008)); see also Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J., 936 F. Supp. 2d 321, 330 (S.D.N.Y. 2013) ("Private conduct need not conform to the First Amendment unless the challenged action of a private party is fairly attributable to the state." (quoting Hollander v. Copacabana Nightclub, 624 F.3d 30, 33 (2d Cir. 2010))), aff'd, 760 F.3d 227 (2d Cir. 2014).

Plaintiff here attempts to satisfy the required element of state action by alleging that the City provides public funding to The Met, a private entity. Compl. ¶¶ 5, 6, 19, 21.  As other courts have described, The Met receives public funds to help meet operating costs and capital needs, and operates in a building leased to it by the City. See Brooklyn Inst. of Arts & Scis v. City of New York, 64 F. Supp. 2d 184, 187, 189 (E.D.N.Y. 1999).  "The museum in turn [is] responsible for programming the facilities and acquiring and exhibiting [its] collections. The lease[] [between the City and The Met] . . . contemplate that the City will maintain the building while [the museum oversees] the display of [its] collection[] to the general public.'" Id. at 187. However, it is well-established that a private entity's mere receipt of public funds and use of government land does not somehow establish state action absent any additional showing that the state was involved with the activity that caused the purported injury. See Am. Atheists, Inc., 936 F. Supp. 2d at 331-33 (holding "there would be no state action" if "the only relationship between the [museum] and the government" was "the mere receipt of government funds and use of government lands"); see also San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 544 (1987) ("The Government may subsidize private entities without assuming constitutional responsibility for their actions."); Rendell-Baker, 457 U.S. 830, 841 (1992) (private school receiving 90% of its operating budget from public funds not state actor); Arons v. State, No. 04 Civ. 0004, 2004 U.S. Dist. LEXIS 9088, at *21 (S.D.N.Y. May 19, 2004) ("The receipt of public funds by a private entity, no matter how extensive, is insufficient in and of itself to establish state action").

The Court's decision in American Atheists, Inc. is particularly illustrative on this point.  In that case, the plaintiffs challenged the National September 11 Museum's display of a seventeen foot cross formed from steel beams removed from the debris after September 11,

2001. Am. Atheists, Inc., 936 F. Supp. 2d at 327-29.  Plaintiffs sued both the museum and the Port Authority of New York and New Jersey ("Port Authority"), which constructed the museum, provided infrastructure funding, and allowed the museum to operate on public property. Id. at 328, 331-33.  The Court found that this relationship between the Port Authority and the museum alone would not have constituted state action, but that the Port Authority's actions with respect to the cross went "far beyond distributing funds or granting land use" as it had actually "played a role in the decision to display the cross at the museum" and thus "had a direct role in the complained-of-activity." Id. at 331-33.  In fact, the Court emphasized, the Port Authority acquired the cross itself and donated it to the museum "for the sole purpose of it being displayed in the Museum." Id.  Accordingly, in light of the Port Authority's role in the decision to display the Cross, which was the specific conduct there being challenged, the Court concluded that this action was fairly categorized as state action. Id.

Here, by contrast, there are no similar allegations suggesting that the City had a role in deciding to display the Paintings at The Met, and as noted above, such decisions regarding selection of artwork are made by The Met, not by the City.  Accordingly, as Plaintiff has failed to plausibly allege the City's involvement in the decision to display these Paintings, their display cannot be categorized as state action merely as a result of the City's general provision of funding and space to The Met.  Plaintiff thus fails on the first element of a § 1983 claim, and the Court need not analyze the constitutionality of the display in question under the First Amendment.

## B.    The Display of the Paintings Does Not Violate the First Amendment

Even assuming that display of the Paintings constitutes government action, which it does not, Plaintiff still fails to state a plausible First Amendment claim.  His Complaint should accordingly be dismissed.

1.  **Plaintiff Does Not Have a First Amendment Right to Censor Art He Deems Offensive**

Plaintiff alleges that he is offended by the way in which Jesus Christ is depicted in paintings created by European artists several centuries ago.  Because of his personal offense, he would have this Court censor the artwork and demand that The Met remove the Paintings from its gallery.  This is antithetical to the bedrock principles of the First Amendment.  "The hallmark of the protection of free speech is to allow free trade in ideas – even ideas that the overwhelming majority of people might find distasteful or discomforting." Virginia v. Black, 538 U.S. 343, 358 (1989) (internal quotation marks omitted).  Speech cannot be restricted "simply because it is upsetting or arouses contempt," Snyder v. Phelps, 562 U.S. 443, 458 (2011), or because "society finds the idea [expressed by the speech] offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414 (1981); see also United States v. Playboy Entertainment Group, 529 U.S. 803, 818 (2000) ("The Constitution exists precisely so that opinions and judgments, including esthetic and moral judgments about art and literature, can be formed, tested, and expressed"); Boos v. Barry, 485 U.S. 312, 322 (1988) ("[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment" (second alteration in original) (internal quotation marks omitted)).

That Plaintiff may have been offended by viewing the Paintings does not somehow vest him with a First Amendment right to demand that they be removed.  To the contrary, the First Amendment prohibits censorship on the grounds that some may find artwork offensive. If Plaintiff is indeed offended by viewing the Paintings, his relief is to choose not to view them.  The First Amendment does not, by contrast, give him the legal right to impose a restriction censoring their continued display.

## 2. Even Assuming That Display of the Paintings Constitutes Government Speech, Plaintiff's Claim Fails as a Matter of Law

Plaintiff's claim fares no better under his theory that the City engaged in "discriminatory and view-point based government speech." Compl. ¶¶ 6, 30.  Indeed, whereas it is a core principle of the First Amendment that government may not restrict private expression "because of its message, its ideas, its subject matter or its content," Police Dep't v. Mosley, 408 U.S. 92, 95 (1972), when the government itself is speaking, "it is exempt from First Amendment scrutiny." Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550, 553 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny."); see also Pleasant Grove City v. Summum, 555 U.S. 460, 467-68 (2009) (While "[t]he Free Speech Clause of the First Amendment restricts government regulation of private speech; it does not regulate government speech.").  A government entity is "'entitled to say what it wishes . . . and to select the views it wants to express' as long as its speech 'comport[s] with the Establishment Clause.'" Am. Atheists, Inc. v. Port Auth., 760 F.3d 227, 246 (2d Cir. 2014) (quoting Pleasant Grove City, 555 U.S. at 467-68).  Thus, "Individuals will generally not be heard to complain that government speech favors one viewpoint over another unless, in the context of a religious discrimination claim, the challenged speech violates the Establishment Clause." Id. (citing Pleasant Grove City, 555 U.S. at 467-68).

Here, Plaintiff's conclusory labeling of the Paintings as anti-Semitic is wholly insufficient to state a violation of the Establishment Clause. "When considering the Establishment Clause, neutrality is the touchstone of First Amendment analysis." Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J., 936 F. Supp. 2d 321, 334 (S.D.N.Y. 2013) (internal quotation marks omitted), aff'd, 760 F.3d 227 (2d Cir. 2014) Government speech or conduct violates the Establishment Clause's neutrality-only requirement when it:  (1) has a predominantly

religious purpose; (2) has a principal or primary effect of advancing or inhibiting religion; or (3) fosters excessive entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612 (1971). The second prong of the inquiry – whether the principal or primary effect is to advance religion – is an "endorsement" test which "asks whether the practice under review in fact conveys a message of endorsement or disapproval." See Am. Atheists, Inc., 936 F. Supp. 2d at 333-34; see also Lynch v. Donnelly, 465 U.S. 668, 689 (1984) (when considering the constitutionality of the display of a religious symbol, "[f]ocusing on institutional entanglement and on endorsement or disapproval of religion clarifies the Lemon test as an analytical device.").

Where, as here, a work of art or religious artifact is displayed in a museum setting, Courts have repeatedly found that such display negates the possibility of any endorsement. Id. at 334-35 (collecting cases) (finding that the display of a seventeen foot cross formed from steel beams removed from the debris after September 11 in the National September 11 Museum does not advance or endorse religion); see also County of Allegheny v. ACLU, 492 U.S. 573, 595 (1989) (O'Connor, J., concurring in part and concurring in the judgment) ("[A] typical museum setting, though not neutralizing the religious content of a religious painting, negates any message of endorsement of that content."); Lynch v. Donnelly, 465 U.S. 668, 683 (1984) (explaining a display of a crèche was "no more an advancement or endorsement of religion than . . . the exhibition of literally hundreds of religious paintings in governmentally supported museums."); Trunk v. City of San Diego, 629 F.3d 1099, 1117 (9th Cir. 2011) ("[A] museum might convey the message of art appreciation without endorsing a religion even though individual paintings in the museum have religious significance"); Van Orden v. Perry, 351 F.3d 173, 181 (5th Cir. 2003) (stating that the display of the Ten Commandments in a traditional museum setting "would wholly negate endorsement"), aff'd, 545 U.S. 677 (2005); Brooklyn Inst.

of Arts & Scis v. City of New York, 64 F. Supp. 2d 184, 187, 189 (E.D.N.Y. 1999) ("No objective observer could conclude that the Museum's showing of the work of an individual artist which is viewed by some as sacrilegious constitutes endorsement of anti-religious views by the City or the Mayor, or for that matter, by the Museum, any more than that the Museum's showing of religiously reverential works constitutes an endorsement by them of religion."). As the Supreme Court recently explained:

> Museums display works of art that express many different sentiments, and the significance of a donated work or art to its creator or donor may differ markedly from a museum's reasons for accepting and displaying the work.  For example, a painting of a religious scene may have been commissioned and painted to express religious thoughts and feelings.  Even if the painting is donated to the museum by a patron who shares those thoughts and feelings, it does not follow that the museum, by displaying the painting, intends to convey or is perceived as conveying the same 'message'

Pleasant Grove City v. Summum, 555 U.S. 460, 477 n.5 (2009).

Indeed, as the above examples show, far from finding that they fall afoul of the Constitution, Courts have repeatedly used the example of religious displays in museums as the archetypical example of what does not violate the Establishment Clause.  In Allegheny, Justice Stevens concurred with the majority's opinion that a crèche displayed on public property violated the establishment clause, but he dissented from the holding that, given its setting, the display of a menorah did not, stating that there should be a strong presumption against the public use of religious symbols. Allegheny, 492 U.S. 573 at 653.  However, Justice Stevens stated, the application of this presumption would only be applied when the message of a display, evaluated in the context in which it is presented, is non-secular. Id.  By way of illustration, Justice Steven used the example of religious paintings in museums, stating "it would be absurd to . . . exclude religious paintings by Italian Renaissance masters from a public museum." Id.

- 10 -

Yet, that is precisely what Plaintiff is requesting in this lawsuit – that the Court order The Met to exclude religious paintings by three Italian Renaissance masters (and in the case of Sebastiano Ricci, a Baroque master) from The Met's gallery.  Such a request is, in the words of Justice Stevens, "absurd," and Plaintiff's claims must be rejected.

**C.**   **The City's Provision Of Funding To The Met Does Not Violate Plaintiff's First Amendment Rights**

Finally, Plaintiff's argument that the City' provision of funding to the Met is "view-point based government speech" that somehow violates his First Amendment rights confuses the applicable law and is without merit.  As an initial matter, as noted above, government speech is exempt from First Amendment scrutiny, and "government may choose, through its funding, to espouse a viewpoint on a matter of public concern without, as a result, being required to give equal time to an opposing view." Brooklyn Inst. of Arts & Scis v. City of New York, 64 F. Supp. 2d 184, 201 (E.D.N.Y. 1999).  Furthermore, to the extent that the provision of funding for the arts raises First Amendment concerns, it is the rights of The Met that are implicated, not those of Plaintiff. See, e.g., id. at 202 ("the Museum, having been allocated a general operating subsidy, can [not] now be penalized with the loss of that subsidy, and ejectment from a City-owned building, because of the perceived viewpoint of the works in the Exhibit.").  Regardless, as the display of the Paintings itself does not violate Plaintiff's First Amendment rights, neither does the City's funding of the Met, which Plaintiff alleges enabled that display.

In sum, Plaintiff's claims that his First Amendment rights were violated by the display of the Paintings, or by the City's funding of the Met, are baseless and fail to state a claim under any First Amendment analysis.

## POINT II

## PLAINTIFF FAILS TO STATE A CLAIM
## UNDER THE CIVIL RIGHTS ACT OF 1964

Plaintiff asserts claims under Titles II and VI of the Civil Rights Act of 1964, both of which are without merit.  As an initial matter, Title II requires Plaintiff to give written notice to the New York Division of Human Rights before bringing suit in federal court. See 42 U.S.C. § 2000a-3(c); see also Whitehurst v. 230 Fifth, Inc., No. 11 Civ. 0767, 2011 U.S. Dist. LEXIS 81573, at *21-23 (S.D.N.Y. July 26, 2011); Ghaznavi v. Days Inn of Am., Inc., No. 91 Civ. 4520, 1993 U.S. Dist. LEXIS 11707, at *7-8 (S.D.N.Y. Aug. 20, 1993).  Plaintiff here does not allege that he exhausted his administrative remedies and, indeed, he filed his Complaint only four days after the November 26, 2015 visit to The Met, from which his claims allegedly arise.  Accordingly, the Court lacks subject matter jurisdiction over his Title II claims.  Regardless, both his Title II and Title VI claims fail on the merits.

A.      **Plaintiff Fails to State a Claim under Title II**

Title II of the Civil Rights Act of 1964 guarantees "[a]ll persons . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . ., without discrimination or segregation on the ground of race, color, religion or national origin." See 42 U.S.C. § 2000a(a).  Its "overriding purpose . . . is 'to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.'" Stone v. N.Y. Pub. Library, No. 05 Civ. 10896, 2008 U.S. Dist. LEXIS 32800, at *8 (S.D.N.Y. Apr. 22, 2008) (quoting Daniel v. Paul, 395 U.S. 298, 308-09 (1969)).  The Second Circuit has indicated that discrimination claims under Title II are subject to the same analysis as discrimination claims under 42 U.S.C. § 1981. See Guichardo v. Langston Hughes Queens Library, No. 15-cv-2866, 2015 U.S. Dist. LEXIS 157894, at *8

(E.D.N.Y. Nov. 20, 2015) (citing Lizardo v. Denny's, Inc., 270 F.3d 94, 104-06 (2d Cir. 2001); Olzmand v. Lake Hills Swim Club, Inc., 495 F.2d 1333, 1340-41 (2d Cir. 1974)).[1]

      In order to state a claim for violation of Title II, Plaintiff "must allege facts which show that he was deprived of equal use and enjoyment of a covered facility's services and facts which demonstrate discriminatory intent." Coward v. Town & Vill. Of Harrison, 665 F. Supp. 2d 281,307 (S.D.N.Y. 2009); see also Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) ("In order to survive a motion to dismiss . . . the plaintiff must specifically allege the events claimed to constitute intentionally discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent" (internal quotation marks omitted)).  Here, Plaintiff utterly fails to allege any facts showing that he was deprived of equal use and enjoyment of The Met, or that Defendants discriminated against him on the basis of his race, color, religion, or national origin.

      First, Plaintiff fails to allege that he was denied equal use and enjoyment of the Met.  In Am. Atheists, Inc. the plaintiffs asserted that the display of a cross at the September 11 Museum violated § 40 of the New York Civil Rights Law, which proscribes and punishes the same conduct as Title II and is analyzed under the same standard.[2]  Am. Atheists, Inc., 936 F. Supp. 2d at 340; see also Whitehurst, 2011 U.S. Dist. LEXIS 81573, at *23-24 (S.D.N.Y. July 26, 2011) (noting that, as with claims under Title II, claims under § 40 of the New York Civil Rights Law are analyzed under the same standard as § 1981).  The Court held that the Statute "is a public accommodations statute which is essentially designed to ensure that the covered

---

[1] "As distinct from Title II, 42 U.S.C. § 1981 protects solely on the basis of race." Guichardo, 2015 U.S. Dist. LEXIS 157894, at *10 n.4 (internal quotation marks omitted).

[2] Like Title II, § 40 of the New York Civil Rights Law guarantees equal rights in public accommodations and prohibits denial of access to public accommodations on the basis of race, creed, color, or national origin. N.Y. Civ. Rights Law § 40.

facilities . . . are fully and equally open to all persons without regard to" race, creed, color, or national origin and that "[b]ecause [the plaintiffs] never allege [] that they are or will be denied equal access to the Museum because of their beliefs, their claims fail." Id.   Likewise, here, Plaintiff does not allege, nor could he, that he was or will be denied equal access to The Met because of his race, religion, color, or national origin. That Plaintiff was apparently personally offended by the content of the Paintings does not demonstrate that their display somehow denied him access to The Met's services.

Moreover, Plaintiff does not allege that either defendant intended to discriminate against him, let alone sets forth facts which could give rise to a plausible inference of discriminatory intent.   "A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss." Guichardo, 2015 U.S. Dist. LEXIS 157894, at *8 (citing Bentley, Jr. v. Mobil Gas Station, 599 F. App'x 395, 396 (2d Cir. 2015)).   Here, other than conclusory allegations asserting that display of the Paintings is discriminatory, Plaintiff does not, and cannot, assert discriminatory intent.

**B.    Plaintiff Fails to State a Claim under Title VI**

Plaintiff's claim under Title VI of the Civil Rights Act of 1964 likewise fails. Title VI prohibits a recipient of federal funds from discrimination on the basis of race, color, or national origin. See 42 U.S.C. § 2000d et seq.   To state a claim for a violation of Title VI, "a plaintiff must show, through specific factual allegations . . ., that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action." Acheampong v. N.Y. City Health & Hosps. Corp., No. 11 Civ. 9205, 2015 U.S. Dist. LEXIS 37933, at *45 (S.D.N.Y. Mar. 25, 2015) "A violation of Title VI is demonstrated only by proof of intentional discrimination." Sulehria v.

- 14 -

New York, No. 13 Civ. 6990, 2014 U.S. Dist. LEXIS 132924, at *13-14 (S.D.N.Y. Sept. 19, 2014) (citing Ass'n v. Civil Serv. Comm'n of New York, 463 U.S. 582, 584 (1983).  Here, again, other than Plaintiff's conclusory assertions, the Complaint is utterly devoid of any allegations of intentional discrimination, nor could Plaintiff plausibly assert that the display of the sixteenth and eighteenth century Paintings was intended to discriminate against him.

## **CONCLUSION**

Based on the foregoing, Defendant City of New York respectfully request that its motion to dismiss the Complaint be granted in its entirety, that all relief sought in the Complaint be denied, and that the City be awarded such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              January 12, 2016


                              ZACHARY W. CARTER
                              Corporation Counsel of the City of New York
                              *Attorney for Defendant City of New York*
                              100 Church Street, Rm. 2-113
                              New York, New York 10007
                              (212) 356-0896
                              otuffaha@law.nyc.gov


              By:        _____s/_____
                              Omar Tuffaha
                              Assistant Corporation Counsel