UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

---------------------------------------------------------------x
:
JUSTIN RENEL JOSEPH, :
:
                 Plaintiff, :    15 Civ. 9358 (GHW)
:
        v. :
:
THE METROPOLITAN MUSEUM OF ART, and :
THE CITY OF NEW YORK, :
:
                 Defendants. :
:
---------------------------------------------------------------x

**DEFENDANT THE METROPOLITAN MUSEUM OF ART'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, NY 10020-1104

Edward J. Davis
Christopher J. Robinson

*Attorneys for The Metropolitan Museum of Art*

Table of Contents

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

I.  THE DISPLAY OF ART BY THE MUSEUM DOES NOT VIOLATE
    THE CIVIL RIGHTS ACT OF 1964......................................................................................1

    A.  There Is No Viable Cause of Action Under Title II Because
        Plaintiff Was Not Denied Equal Access to a Place of Public
        Accommodation. ........................................................................................................1

    B.  There Is No Viable Cause of Action Under Title VI Because No
        Claim of Intentional Discrimination is Possible. .......................................................3

II. THE FIRST AMENDMENT ALSO BARS PLAINTIFF'S CLAIMS AND
    WOULD PROHIBIT THE INJUNCTION HE REQUESTS. ................................................6

CONCLUSION................................................................................................................................7

The Metropolitan Museum of Art (the "Museum") submits this reply memorandum of law in further support of its motion to dismiss the Complaint. For the reasons set forth below, the Complaint does not and cannot state a claim and should be dismissed with prejudice.

## PRELIMINARY STATEMENT

Plaintiff's opposition reveals a continuing misapprehension of the civil rights laws and their application to the Museum's display of one of the world's most diverse collections of art. The Civil Rights Act does not require museums and other artistic institutions to censor works of art that a vocal patron may deem offensive. If it did, any such claim would be barred by the First Amendment. There is no way the Complaint can be amended to state a valid claim. It should be dismissed with prejudice.

## ARGUMENT

**I.  THE DISPLAY OF ART BY THE MUSEUM DOES NOT VIOLATE THE CIVIL RIGHTS ACT OF 1964.**

    **A.  There Is No Viable Cause of Action Under Title II Because Plaintiff Was Not Denied Equal Access to a Place of Public Accommodation.**

Plaintiff contends that the Museum has denied him "equal access" to its services or facilities because he believes the Museum has "subjected [him] to artwork that change[s] the physical features of historically important minorities to appeal to white 'ideals of human appearance.'" Pl. Museum Opp. at 9.[1] But the Museum's even-handed display of centuries-old works of art that may be enjoyed – or criticized – by all who enter the Museum in no way constitutes a violation of the equal access provision of the Civil Rights Act (*see* 42 U.S.C. § 2000a), even if Plaintiff finds a few of the Museum's hundreds of thousands of objects to be distasteful or historically inaccurate.

---

[1] "Pl. Museum Opp." refers to Plaintiff's Opposition to the Museum's Motion to Dismiss.

A claim under Title II of the Civil Rights of Act of 1964 requires a plaintiff to show, at a minimum, that he was "denied services based upon [his] race." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 106 (2d Cir. 2001); *see also Am. Atheists, Inc. v. Port Auth. of NY & NJ*, 936 F. Supp. 2d 321, 340 (S.D.N.Y. 2013) (public accommodation discrimination claim dismissed because prospective museumgoers did not "allege . . . that they are or will be denied *equal access to the Museum* because of their beliefs.") (emphasis added)), *aff'd by* 760 F.3d 227 (2d Cir. 2014). Plaintiff here does not allege he has received anything less than the same access to the Museum that every other person enjoys. Accordingly, he has no viable claim.

Plaintiff's examples of supposedly viable claims under Title II illustrate why his claim fails as a matter of law. For instance, he refers to a press release in which the United States Department of Justice announced a settlement with Domino's Pizza because the chain allegedly had a policy of "providing only limited pizza delivery in certain geographical areas" that "had a discriminatory effect on African Americans." Press Release, *Justice Department Reaches Agreement with Domino's Pizza, Inc. on Delivery Services Policy* (June 5, 2000).[2] The settlement was based on a plausible Title II allegation: that African-Americans were denied a service – pizza delivery – on account of their race. *Cf. Blow v. N. Carolina*, 379 U.S. 684, 685 (1965) (overturning trespass convictions of African-Americans who were denied service at a segregated restaurant in North Carolina because the "Civil Rights Act of 1964 forbids discrimination in places of public accommodation").

Nothing of the sort has occurred here. Instead, Plaintiff contends that the Museum has violated Title II by publicly displaying works to which he objects because he deems them offensive. But there is no allegation that the artwork the museum displays is not available to everyone. He has not been denied access or any service of the Museum.

---

[2] Available at http://www.justice.gov/archive/opa/pr/2000/June/318cr.htm.

The Museum's extraordinarily diverse collection of artwork and objects from across a great many places and cultures makes Plaintiff's baseless (and inflammatory) statement that the Museum "has a policy of displaying artworks that cater to a white audience without regard for its adverse disparate impact" particularly implausible. Pl. Museum Opp. at 8. As explained in the Museum's opening Memorandum, the Museum showcases an enormous variety of works of art, including vastly different depictions of Jesus from the Republic of the Congo, Armenia, Ethiopia, and Byzantium.[3] *See* Opening Mem. at 2. Plaintiff's opposition ignores these facts in an unfair effort to impugn the Museum and mischaracterize its principles.

Plaintiff's argument that he may proceed on a disparate impact theory under Title II, *see* Pl. Museum Opp. at 10–11, is both erroneous, *see* Opening Mem. at 5, and moot because the claim fails under any evidentiary standard. Whether he alleges intentional discrimination or not, he must plausibly allege a violation of the statute: a denial of the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race." 42 U.S.C. § 2000a(a). This he cannot do. His claim that the Museum has violated Title II by denying him equal access on account of race should therefore be dismissed with prejudice.

**B.    There Is No Viable Cause of Action Under Title VI Because No Claim of Intentional Discrimination is Possible.**

Plaintiff contends that the Museum has violated Title VI of the Civil Rights Act because it has used public funds "in a way that encourages, subsi[dizes] or results in racial discrimination" and denies that, to proceed under Title VI, he must show intentional discrimination. Pl. Museum Opp. at 11. But his argument – that he need only show that the

---

[3] Indeed, if displaying art that reflects a particular culture that a patron finds offensive could, by itself, permit an inference of discrimination against a museum, then virtually every major art museum in the city might be forced to empty its walls.

3

Museum's actions had a disparate impact – relies on misreadings of decisions that have in any event been superseded.  The Supreme Court made it clear in *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001), that Title VI "prohibits only *intentional* discrimination" by covered entities (emphasis added).  And Plaintiff has no way of showing discriminatory intent: the Museum's mere knowledge that a work of art in its collection depicts a historical figure in a way that some may deem inaccurate or even offensive does not mean that the Museum intentionally discriminated against anyone by choosing to display it.  As the Museum explained in its opening memorandum, the Complaint does not contain a plausible claim that the Museum chose to display the paintings with the intent of adversely affecting members of a protected group.  *See* Opening Mem. at 6-8.

The decisions Plaintiff cites in support of his disparate-impact argument all predate *Sandoval*, which held in 2001 both that "Title VI itself directly reaches only instances of intentional discrimination" and that regulations that applied in that case, which prohibited measures having a disparate impact on minorities, cannot be enforced through a private right of action.  532 U.S. at 281, 293 (quotation marks omitted).  *Sandoval* also forecloses Plaintiff's unsupported argument that he should be permitted to proceed under a disparate impact theory anyway because he is not asking for damages.  That case, like this one, involved a plaintiff's request for injunctive relief (to require Alabama to administer a driver's license exam in languages other than English), *id.* at 279, but the Supreme Court still held that there was no private right of action to enforce the disparate impact regulations that applied there, *id.* at 293.

Further, Plaintiff's attempt to state a claim for intentional discrimination confuses intent to display a picture with intent to discriminate.  Of course Museum officials choose carefully what paintings hang on the walls, and Museum officials are aware of many important historical

4

and artistic facts regarding the paintings. But, to state a claim, Plaintiff must allege not merely that the Museum intentionally displayed a painting, even with knowledge that some might find it controversial; he must show that Museum officials "selected or reaffirmed a particular course of action at least in part '*because of*' not merely 'in spite of' its adverse effects upon an identifiable group." *Soberal-Perez v. Heckler*, 717 F.2d 36, 42 (2d Cir. 1983) (emphasis added; some quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[P]urposeful discrimination requires more than . . . awareness of consequences." (quotation marks omitted)). An essential element of intentional discrimination is proof "that the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001). Despite Plaintiff's misstatement of the Museum's argument, there can be no plausible claim that the Museum selects works to exhibit *because* they somehow discriminate.

Plaintiff attempts to distinguish *Grimes By & Through Grimes v. Cavazos*, 786 F. Supp. 1184 (S.D.N.Y. 1992), which dismissed a claim that the content of New York City schools' curriculum was the result of intentional discrimination. *Id.* at 1185. But he is mistaken not only about the details of that case, but also its import. Like this case, *Grimes* was an action for "declaratory and injunctive relief," *id.*, despite his suggestion to the contrary, *see* Pl. Museum Opp. at 12. *Grimes* and other decisions regarding required reading in schools confirm that displaying cultural works that were created during a time period when values inconsistent with the values of the Civil Rights Act were prevalent is not itself an act of intentional discrimination. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1032 (9th Cir. 1998) (the "assignment of a literary work . . . cannot constitute the type of discriminatory conduct prohibited by the Fourteenth Amendment and Title VI, regardless of the fact that the work may be deemed to contain racist ideas or language"). If this were not so, Title VI could be turned into

5

a tool for the erasure of all artifacts of history that could be deemed offensive.  If there can be no Title VI claim where students are *required* to read works with racist ideas, *id.* at 1031, there can be no claim here.

## II. THE FIRST AMENDMENT ALSO BARS PLAINTIFF'S CLAIMS AND WOULD PROHIBIT THE INJUNCTION HE REQUESTS.

Plaintiff's discussion of the impact of the First Amendment on his claims is exactly backwards.  Plaintiff seeks to avoid any discussion of free speech, arguing that he has "never accused" the Museum of "violating *his* First Amendment rights," Pl. Museum Opp. at 13 (emphasis added), but he fails to acknowledge that the Museum has First Amendment rights, too.  The Museum's First Amendment rights protect it from being subjected to censorship by officials or visitors who finds certain works offensive.  The extraordinary injunction Plaintiff requests would itself be an unconstitutional restraint on speech.  *See* Opening Mem. at 8-12.

"[T]he First Amendment must assure that government does not curtail valid expression because a majority, or plurality, or any segment of the constituency wishes to prohibit or penalize that expression."  *Cuban Museum of Arts & Culture, Inc. v. City of Miami*, 766 F. Supp. 1121, 1130 (S.D. Fla. 1991); *see also Brooklyn Inst. of Arts & Sciences v. City of New York*, 64 F. Supp. 2d 184, 191–93 (E.D.N.Y 1999) (First Amendment prohibited City from cutting off funding to museum displaying works that mayor thought were offensive).  The remedy Plaintiff seeks here goes directly to the heart of the Museum's First Amendment rights, which are expressed through "art being shown at the Museum" and the accompanying ideas it generates.  *Brooklyn Inst. of Arts & Scis.*, 64 F. Supp. 2d at 199.

Because the Museum may protect its free speech rights, Plaintiff cannot confine the First Amendment's application to his misguided claim that the City has violated the First Amendment through its financial support of the Museum (a claim which should also be rejected).  Rather, the

First Amendment provides additional grounds for dismissal with prejudice.  No amendment to the Complaint could possibly cure the fundamental problem: Plaintiff's attempt to dictate to the Museum what artwork it may display conflicts with fundamental values of free speech that are protected by the First Amendment.[4]

## CONCLUSION

For the foregoing reasons, the Complaint fails to state a claim and amending it would be futile.  The Museum respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Dated: New York, New York
       February 9, 2016

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ Edward J. Davis
    Edward J. Davis
    Christopher J. Robinson
1251 Avenue of the Americas
21st Floor
New York, NY  10020-1104
(212) 489-8230
eddavis@dwt.com
chrisrobinson@dwt.com

---

[4] The Court's orders of December 22, 2015 and January 22, 2016 gave Plaintiff the option of amending his Complaint or opposing the motion to dismiss.  Because Plaintiff chose the latter option, the Court may infer that Plaintiff can add nothing to the Complaint that would make out a valid claim.