USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/15/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                    :
JUSTIN RENEL JOSEPH,                :
                                                    :
                                             Plaintiff,    :                 1:15-cv-9358-GHW
                                                    :
                           -v -                                     :               MEMORANDUM OPINION
                                                    :                     AND ORDER
THE METROPOLITAN MUSEUM OF ART;   :
THE CITY OF NEW YORK,                   :
                                                    :
                                                 Defendants.   :
                                                    :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiff Justin Renel Joseph, proceeding *pro se*, alleges that the public display of certain fifteenth and eighteenth century paintings at the Metropolitan Museum of Art (the "Met") violates the Civil Rights Act and the First Amendment of the United States Constitution because the artwork contains depictions of Jesus Christ that he asserts are historically inaccurate. Plaintiff seeks an order from this Court directing the museum to remove the paintings from its display. Because the complaint fails to plausibly allege that the public display of artwork at the Met violates the Civil Rights Act or the First Amendment, and for the reasons outlined below, Defendants' motions to dismiss are GRANTED without leave to amend the complaint.

## II.    BACKGROUND

Plaintiff alleges that he visited the Met on November 26, 2015. Compl. ¶¶ 2, 13. During that visit, he encountered four works of art depicting Jesus Christ: (1) "The Resurrection," created by Italian artist Perugino circa 1500; (2) "The Crucifixion," created by Italian artist Francesco Granacci between 1500 and 1510; (3) "The Miracle of the Loaves and Fishes," created by Italian

artist Tintoretto between 1545 and 1550; and (4) "The Holy Family with Angels," created by Italian artist Sebastiano Ricci circa 1700. *Id.* ¶ 2. Plaintiff attached pictures of the four paintings, taken from the Met's website, as exhibits to the complaint. *See* Compl., Exs. A–D. The four pieces of artwork are part of the Met's permanent collection. *Id.* ¶ 5.

Plaintiff, "who is of Hebrew and African descent," alleges that he was offended and suffered various psychological harms upon viewing the artwork because they "depict the historical and public figure of Hebrew descent, Jesus Christ, as a blonde haired, fair-skinned, Aryan adult male, despite that an adult male native to the Middle-Eastern region of Hebrew descent . . . would not be genetically disposed to possess such features." *Id.* ¶¶ 3, 16–17, 28. Plaintiff further alleges that the "flagrant" public display of the centuries-old paintings in a museum is "anti-Semitic, racist and offensive" because the display "endor[ses] the cultural theft of the historical and public figure of Jesus Christ" from "the Hebrew people and the people of Middle-Eastern descent." *Id.* ¶¶ 4-6, 23, 26.

Plaintiff filed a complaint on November 30, 2015, shortly after his visit to the museum. Plaintiff brings claims against the Met for displaying the artwork, and the City of New York ("the City") for "us[ing] public funds to house the Racist Artworks at the MET." *Id.* ¶ 19. Specifically, the complaint asserts three causes of action: (1) "The City of New York engaged in discriminatory and view-point based government speech that violates Title II and VI of the Civil Rights Act of 1964 by expending public funds to publicly display the Racist Artworks at the MET;" (2) "[t]he City of New York violated the First Amendment by engaging in government speech that violates Titles II and VI of the Civil Rights Act of 1964;" (3) "[t]he MET violated Titles II and VI of the Civil Rights Act of 1964 by publicly displaying the Racist Artworks." *Id.* ¶¶ 30, 32, 34. Plaintiff seeks declaratory relief and injunctive relief—specifically, an order from this Court directing the Met to remove the

four works of art from its permanent display in the museum—as well as costs and expenses under 42 U.S.C. § 1988.

The Met and the City filed separate motions to dismiss the complaint. *See* Dkt. Nos. 19, 22.

### III. ANALYSIS

#### A. *Motion to Dismiss*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks and citation omitted). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). To meet this plausibility standard, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.*

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and "interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (internal quotation marks and citation omitted); *see also Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .") (internal quotation marks and citation omitted).

### B. Title II of the Civil Rights Act of 1964

Title II of the Civil Rights of Act of 1964 entitles all persons "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). "The overriding purpose of Title II was to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Stone v. N.Y. Pub. Library*, No. 05-cv-10896 (DLC), 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008) (alterations omitted) (quoting *Daniel v. Paul*, 395 U.S. 298, 307-08 (1969)), *aff'd*, 348 F. App'x 665 (2d Cir. 2009).

A plaintiff bringing a claim under Title II "must allege facts which show that he was deprived of equal use and enjoyment of a covered facility's services and facts which demonstrate discriminatory intent." *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009) (quoting *Thomas v. Tops Friendly Markets, Inc.*, No. 96-cv-1579 (RSP) (GJD), 1997 WL 627553, at *5 (N.D.N.Y. Oct. 8, 1997)). The parties do not dispute that the Met is a place of public accommodation within the meaning of the statute.

Plaintiff fails to plausibly allege that he was denied the equal use and enjoyment of the Met. Nowhere in the complaint does Plaintiff allege that he was treated differently than other museum visitors on the basis of his race, color, religion, or national origin. Although he may have found the art on display offensive, Plaintiff does not allege that he was denied equal opportunity to view and enjoy—or in his case, disapprove of—the artwork, and therefore lacks a cognizable claim under Title II. *See Rogers v. N.Y.C. Bd. of Elections*, 988 F. Supp. 409, 412 (S.D.N.Y. 1997) ("The Civil Rights Act is not intended to provide a universal remedy for all the unfairnesses of life; its exclusive

concern is with discrimination based on the grounds it enumerates."); *see also Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.*, 936 F. Supp. 2d 321, 340 (S.D.N.Y. 2013) (plaintiffs challenging display of seventeen-foot tall cross at September 11 Museum failed to state a claim under comparable state public accommodations law, N.Y. Civ. Rights Law § 40, where they "never allege that they are or will be denied equal access to the Museum because of their beliefs"), *aff'd*, 760 F.3d 227 (2d Cir. 2014).

### C. Title VI of the Civil Rights Act of 1964

Title VI of the of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To state a claim for a violation of Title VI, 'a plaintiff must show, through specific factual allegations, that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action.'" *Dawkins v. Biondi Educ. Ctr.*, No. 13-cv-2366 (KMK), 2016 WL 590237, at *8 (S.D.N.Y. Feb. 10, 2016) (quoting *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-cv-5881 (CS), 2012 WL 4477552, at *14 (S.D.N.Y. Sept. 27, 2012)).[1]

In order to establish intentional discrimination, Plaintiff "must show that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." *Soberal-Perez v. Heckler*, 717 F.2d 36, 42 (2d Cir. 1983)

---

[1] Plaintiff disputes that a Title VI claim requires a showing of intentional discrimination, and asserts that "[c]ourts have often found Title VI disparate impact violations." Pl's. Opp'n Br. to Met's Mot. Dismiss at 11, Dkt. No. 34. The cases relied upon by Plaintiff pre-date the Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001), which "held that private parties may not invoke Title VI regulations to obtain redress for disparate-impact discrimination because Title VI itself prohibits only intentional discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) (citing *Sandoval*, 532 U.S. at 285).

(internal quotation marks and alterations omitted) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Here, Plaintiff fails to plausibly allege that the display of sixteenth and eighteenth century paintings is an act of intentional discrimination. Although the paintings may be historically inaccurate, Plaintiff cannot plausibly allege that the artwork was displayed at the museum with the purpose of adversely affecting members of a protected group. *Cf. Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1032 (9th Cir. 1998) ("[T]he assignment of a literary work [by school officials] . . . cannot constitute the type of discriminatory conduct prohibited by the Fourteenth Amendment and Title VI, regardless of the fact that the work may be deemed to contain racist ideas or language.").

### D. First Amendment Claim

Plaintiff claims that the City, by providing financial support to the Met, engaged in discriminatory speech in violation of the First Amendment. "The First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976). The proper procedural vehicle for Plaintiff to assert such a constitutional violation is 42 U.S.C. § 1983, "which permits suit for violations of constitutional and federal statutory provisions." *Hertz Corp. v. City of New York*, 1 F.3d 121, 133 (2d Cir. 1993). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)).

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 186 (2d Cir. 2005)). "A plaintiff pressing a

claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Id.* (quoting *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003)).  In order to demonstrate state action, "a plaintiff must establish both that her alleged constitutional deprivation was caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation is a person who may fairly be said to be a state actor."  *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263–64 (2d Cir. 2014) (brackets, internal quotation marks, and citation omitted), *cert. denied* 135 S. Ct. 1895 (2015).

"There are a host of factors that can bear on the fairness of an attribution of a challenged action to the State," but nevertheless "three main tests have emerged:"

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant*, 691 F.3d at 207 (brackets and ellipses omitted) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008)).  The Court's inquiry begins "by identifying the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity," and under each test the fundamental question "is whether the private entity's challenged actions are fairly attributable to the state." *Id.* (internal quotation marks and citations omitted).

Plaintiff fails to plausibly allege state action.  The gravamen of Plaintiff's complaint is a challenge to a museum's display of centuries-old artwork in its permanent collection.  Although Plaintiff alleges that the City provides financial support to the Met, and in his opposition further argues that the Met operates on land owned by the City, the complaint does not allege that the City

7

influenced the Met's decision to display any particular work of art.² Indeed, Plaintiff concedes that "the MET's choice to house the Racist Artworks is the MET's choice." Pl. Opp'n to City's Mot. Dismiss at 6, Dkt. No. 33. "State assistance, including 'using government property, government staff, and even government funds,' is insufficient to establish pervasive entwinement unless 'the *decisionmakers* were ostensibly state actors.'" *Am. Atheists*, 936 F. Supp. 2d at 333 (brackets omitted and emphasis in original) (quoting *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 212 (2d Cir. 2009)); *see also Grogan*, 768 F.3d at 269 (finding no state action because the "decisive factor" in the "close nexus" test is "the amount of control" that the state exercises over a private entity's "management decisions"). Thus, the complaint fails to plausibly allege that the Met is a state actor under the "close nexus" test, and otherwise fails to plausibly suggest that the Met's actions are fairly attributable to the state under the remaining tests.³

In any event, even if the Met's display of art constituted state action, Plaintiff's First Amendment claim would nonetheless fail. The Court notes that Plaintiff expressly disavows any claim under the Establishment Clause of the First Amendment.⁴ *See* Pl. Opp'n to City's Mot.

---

² Courts have found that a state's decision to withhold allocated funding from a museum, in opposition to the display of a controversial or offensive exhibit, would likely violate the museum's First Amendment rights. *See, e.g.*, *Brooklyn Inst. of Arts & Scis. v. City of New York*, 64 F. Supp. 2d 184, 200 (E.D.N.Y. 1999) (preliminarily enjoining City from withholding funds in response to museum's display of painting described by City's Mayor as "sick" and "desecrat[ing] someone else's religion," and finding that "[t]here can be no greater showing of a First Amendment violation"); *see also Cuban Museum of Arts & Culture, Inc. v. City of Miami*, 766 F. Supp. 1121 (S.D. Fla. 1991) (preliminarily enjoining Miami from refusing to renew museum's lease in response to display of works viewed as offensive to large segment of Cuban population in Miami).

³ Although Plaintiff fails to plausibly allege that the Met is a state actor in this context, the Court expresses no view as to whether the Met may be a state actor in other contexts. *See Massie v. Metro. Museum of Art*, No. 11-cv-9549 (JPO), 2014 WL 3301196, at *4–5 (S.D.N.Y. July 8, 2014) (noting that the City's leases with the Met "contemplate that the City will maintain the buildings," and explaining that "it is at least possible" that the supervisors of a Met employee were acting under color of state law to the extent those supervisors "were acting in the capacity of maintaining the Met's buildings") (internal quotation marks and alterations omitted).

⁴ Even if Plaintiff in fact alleged that the Met's display of religious artwork violated the Establishment Clause, such a claim would not likely survive a motion to dismiss. *See Am. Atheists*, 936 F. Supp. 2d at 335–36 (S.D.N.Y. 2013) (explaining that "[c]ourts repeatedly have recognized that including a religious artifact in a museum will often times negate any endorsement," and collecting cases).

Dismiss at 7.  The Court also notes that Plaintiff does not allege that the City restricted his speech.  *See id.* ("Nowhere in the Plaintiff's Complaint does [*sic*] allege that NYC violated his personal First Amendment Rights.").  Rather, Plaintiff challenges the contents of the purported government speech itself as offensive.

However, "[w]hen government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."  *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015).  Although "constitutional and statutory provisions *outside* of the Free Speech Clause may limit government speech," *id.* at 2246 (emphasis added), Plaintiff fails to plausibly allege that any such constitutional or statutory provisions restrict the City's speech in this context.  Thus, even assuming that the display of art constituted state action, Plaintiff fails to plausibly to state a claim under the First Amendment.

### E.  *Leave to Amend*

Courts "are normally accommodating to motions for leave to amend *pro se* complaints, but may deny them when amendment would be futile[.]"  *Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009) (internal quotation marks and citations omitted).  Because the defects in Plaintiff's complaint—by which Plaintiff arrogates the authority to censor historical works of art that he finds to be inaccurate—cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## IV. CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 19 and 22, and to close this case.

SO ORDERED.

Dated: June 15, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge